**In the Matter of Donna SCHAEFER.**

**No. C5–92–2591.**

Court of Appeals of Minnesota.

April 6, 1993.

area near where he had been sitting.

Michael J. Biglow, Minneapolis, for Donna Schaefer.

Michael O. Freeman, Hennepin Co. Atty., Carolyn A. Peterson, Asst. Co. Atty., Minneapolis, for State.

Considered and decided by PETERSON, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

PETERSON, Judge.

Donna Schaefer appeals from an order committing her as mentally ill. She challenges the trial court's conclusion that her failure to obtain necessary food, shelter, or medical care demonstrates that her mental illness poses a substantial likelihood of physical harm to her. We affirm.

## FACTS

Schaefer was committed as mentally ill following a commitment hearing on December 1, 1992.

Francis Rowan, a prepetition screener for Hennepin County, testified at the hearing that she and a psychiatrist interviewed Schaefer at the end of October 1992. Rowan stated that Schaefer was angry, suspicious and guarded during the interview. Schaefer's house, a three bedroom rambler, had no electricity and no heat except a gas space heater in the basement. After learning that Schaefer had no food in the house, Rowan tried unsuccessfully to help her obtain emergency assistance.

Helen Williams, an adult protection worker, testified that Schaefer was eligible for various types of public assistance, but Schaefer refused to cooperate in filling out the forms necessary to obtain emergency assistance. Schaefer believed the forms were a job application for the State of Minnesota, and she did not want to work for the state.

Barbara Wicks, a long-time friend of Schaefer, testified she visited Schaefer on several occasions and noticed that the electricity had been turned off. She also saw there was no food in the house. During one visit, Schaefer gave Wicks $10.00 and some coupons so that Wicks could get her some food.

Wicks tried to help Schaefer fill out forms to obtain county assistance, but Schaefer refused the help. Wicks also offered to take Schaefer to see a doctor because of a tooth that was bothering her, but Schaefer declined the offer. On another occasion, Wicks visited Schaefer intending to drive her to the bank so she could pay her electric bill. Schaefer screamed and yelled at Wicks for visiting without first notifying her.

Dr. Irving Bernstein testified that Schaefer suffered from paranoid schizophrenia. In his opinion, Schaefer was not taking care of herself adequately. She did not believe she was mentally ill and refused to take medication for the disorder. Dr. Bernstein admitted that Schaefer must have been getting some food because she did not appear to be starving. He also stated it was conceivable for her to live in one room with a space heater as long as the heater continued to work and she wore a coat.

Schaefer testified that she is taking care of herself. She has a space heater in her home and she has had "some food available to [her] at times," but "probably not enough." She claimed to have had negative experiences with social workers in the past, which is why she refuses to cooperate

with them. She was hesitant to answer some questions because she was put in a "mental ward" the last time she answered truthfully.

## ISSUE

Was there clear and convincing evidence that appellant's mental illness posed a substantial likelihood of physical harm to herself?

## ANALYSIS

In reviewing a commitment, this court is limited to an examination of whether the trial court complied with the requirements of the commitment act. *In re Fusa*, 355 N.W.2d 456, 457 (Minn.App.1984). Before committing a mentally ill person, a trial court must find the person mentally ill by clear and convincing evidence. Minn. Stat. § 253B.09, subd. 1 (1992); *Fusa*, 355 N.W.2d at 457. The commitment must be "justified by findings based upon evidence at the hearing." Minn.R.Civ. Commitment 11.01. The findings "shall not be set aside unless clearly erroneous." Minn.R.Civ.P. 52.01; *Fusa*, 355 N.W.2d at 457.

A person may not be committed as mentally ill unless the person's mental illness poses a substantial likelihood of physical harm to self or others as demonstrated by:

(i) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment, or

(ii) a recent attempt or threat to physically harm self or others.

Minn.Stat. § 253B.02, subd. 13(b) (1992).

Schaefer does not challenge the determination that she suffers from paranoid schizophrenia. She argues that it was not shown that her mental illness poses a substantial likelihood of physical harm to her because there was not clear and convincing evidence that she failed to obtain necessities or that she has suffered any physical harm. The fact that she has not suffered any harm, Schaefer argues, demonstrates that she has not failed to obtain necessary food, clothing, shelter, or medical care.

Schaefer takes the phrase "necessary food, clothing, shelter, or medical care" out of context. The phrase "necessary food, clothing, shelter, or medical care" must be read in the context of the entire clause. Minn.Stat. § 253B.02, subd. 13(b). The statute does not require that a person suffer physical harm as a result of a failure to obtain necessary food, clothing, shelter, or medical care before the person can be committed. *In re Terra*, 412 N.W.2d 325, 328 (Minn.App.1987). The statute requires only that the failure to obtain the necessary items demonstrate "a substantial likelihood of physical harm" to the individual. *See In re Burmeister*, 391 N.W.2d 89, 91 (Minn.App.1986) (threat of harm is all that is required).

The trial court found that Schaefer lost her job some time ago and has no apparent means of supporting herself. Her paranoia causes her to be delusional, guarded and suspicious of those around her. As a result, she refuses to cooperate with adult protection workers to obtain emergency assistance. She is not receiving food stamps and admitted she is probably not getting enough food. Also, there is no electricity in her home. She has no heat except for the space heater, no lights, and a refrigerator and freezer she cannot use. Schaefer was unable to explain how she would meet her basic needs if she returned home. In addition, Schaefer refuses to take prescribed medication for her illness because she does not believe she is mentally ill.

## DECISION

The trial court's findings support its conclusion that Schaefer's failure to obtain necessities demonstrates a substantial likelihood of physical harm to her. A person may be able to survive winter in a house with limited heating, but it is substantially likely that attempting to do so will cause physical harm. Also, a person who has no food in her house may be able to obtain some food before suffering any physical harm from not eating, but when the person has no apparent means to obtain food it is substantially likely that she will suffer

physical harm as a result of her failure to obtain food.

Affirmed.